# Exhibit O

Cristin Bulman Declaration

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEFFREY GOOD,

                Plaintiff,

                vs.                            Case No. 21-02839-JAR-ADM

UNITED STATES DEPARTMENT OF
EDUCATION, ET AL.,

                Defendants.

## DECLARATION OF CRISTIN BULMAN

I, Cristin Bulman, do declare under penalty of perjury and pursuant to 28 U.S.C. § 1746, that the following is true and accurate to the best of my information and belief:

**JOB POSITION AND RESPONSIBILITIES**

1. I have been employed as a Loan Analyst with the United States Department of Education ("Education"), Federal Student Aid, Litigation Support Team based out of San Francisco, California since April 2016.

2. Education is a government agency of the United States of America.

3. As a Loan Analyst, I assist the United States Attorney's Offices with student loan cases that are in bankruptcy or other litigation by providing the loan history, files and repayment options best suited for the debtor to repay their loans. As a Loan Analyst, my responsibilities include assisting United States Attorney's Offices with both Federal District Court and Bankruptcy Court litigation involving student loans. The litigation support provided include, but is not limited to, the following: (1) providing background information on the individual's loan history (including repayment history and forbearance/deferment history) and loan programs; (2) preparing responses to discovery requests, and especially providing responses to interrogatories and requests for production of documents; (3) providing information regarding repayment options available to the borrower; (4) providing testimony to the actual case either in person or by submission of a declaration/affidavit; and (5) facilitating settlement.

4. In the course of performing my responsibilities, I have become familiar with the various types of loans authorized by Title IV of the Higher Education Act (HEA) of 1965, as amended, and made by banks, by institutions of higher education, and by Education itself, and now held by Education. I am familiar with how Education receives information and creates and maintains records related to those loans, the repayment plans and deferment/forbearance options

1

available to Title IV borrowers, and the administrative discharge options offered pursuant to the HEA.

5. I am fully competent to make the statements contained in this Declaration, and I have business knowledge of the facts stated herein. I am a duly authorized Custodian of Records, or other qualified witness for Education. As such, I have authority to certify the records attached to the Memorandum in Support of Defendant United States Department of Education's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) (Exhibits A to M). The exhibits therein are: (1) the original or a duplicate of the original record in the control or custody of Education or its contractor; (2) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (3) was kept in the course of Education's or its contractor's regularly conducted activity; and (4) was made by the regularly conducted activity of Education as a regular practice.

6. In the performance of my duties, the aforementioned records were obtained by Education personnel regarding the student loans owed by the Plaintiff, Jeffrey Good. Education assembled these documents to prepare for its defense of the lawsuit brought by Mr. Good against Education. I have reviewed documents related to loans held by Education, such as loan applications, promissory notes, correspondence to and from Mr. Good, and other servicing records, and am familiar with the documents and records contained therein. To the best of my knowledge, all loan records, reports, and data compilations regarding his loans were kept by Education or servicers in the ordinary course of regularly conducted activity for the student loan programs and were made at or near the time of the transactions occurring by a person with knowledge.

**OVERVIEW OF THE WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM**

7. The William D. Ford Federal Direct Loan Program ("FDLP") is authorized under Title IV, Part D of the HEA of 1965, as amended. Loans under the FDLP first became available on July 1, 1994. Four types of loans are offered under FDLP: Subsidized Direct Stafford, Unsubsidized Direct Stafford, Direct PLUS (Parent Loan for Undergraduate Students), and Direct Consolidation loans. Each type of loan has terms identical to its counterpart under the Federal Family Education Loan Program (FFELP) under Title IV, Part B of the HEA.

8. Under the FDLP, Education provides loans to qualified borrowers to facilitate their attendance at eligible postsecondary schools. Loan proceeds are generally provided to the school by electronic funds transfer (EFT) and are disbursed by credit to the student's account at the school. Some funds may be disbursed by the school directly to the borrower for living expenses. In the event of a borrower's default in repaying the FDLP loan, Education transfers responsibility for handling the FDLP loan from one of its non-default loan servicers to its Default Resolution Group, which handles the defaulted FDLP loan as it does other defaulted Title IV, HEA loans assigned from guaranty agencies and schools. After default, Education engages in legally available collection efforts, including dunning, referral to private collection agencies, the Treasury Offset Program, Administrative Wage Garnishment, and, as a last resort, litigation.

**NATIONAL STUDENT LOAN DATABASE SYSTEM (NSLDS)**

9. National Student Loan Data System (NSLDS) is a computer database which includes information on outstanding loans made[1] pursuant to Title IV of the HEA, as well as a large body of loans made and paid off before inception of the NSLDS in 1994. The NSLDS includes a limited amount of information on loans not held by Education, including loans not in repayment status. All information in NSLDS is derived from regular reports to Education from the holders of the loans, including Education itself, based on the holder's regularly maintained records on these loans.

**DEBT MANAGEMENT COLLECTIONS SYSTEM (DMCS)[2]**

10. DMCS is a computer database which contains pertinent information on all defaulted student loan accounts held by Education and serviced by Maximus Federal Services, Inc. Education's DMCS database contains records of payment transactions, collection actions, and telephonic and written contacts between borrowers and Education staff or the staff of Education's contractors. These records are created pursuant to Education's procedures by Education staff and by staff of contractors retained by Education to collect these loans, in the regular course of their duties at the time of the transaction or event recorded. The records contained in DMCS are made at or near the time of the transaction recorded, by or from information transmitted by a person with knowledge of the transaction, and are kept in the course of Education's regularly conducted business of administration of the several loan programs under which these loans are made, pursuant to Education's regular practice of making and keeping such records.

**EDUCATION'S CREDIT REPORTING PROCESS**

11. Pursuant to Section 430A of the Higher Education Act, as amended, 20 U.S.C. §1080a, Education is required to provide to consumer reporting agencies data regarding each debt that it holds. Student loan data is submitted via e-Oscar by Debt Number, which uniquely identifies each debt. The data Education reports to CRAs includes the date the debt was opened, original loan amount, debt type, repayment status, delinquency date, if any, debt balance, and monthly payment information. Education supplies this information monthly to all CRAs for each of the student loan debts held by Education.

12. Education is considered to be a data furnisher for credit reporting purposes. The information it reports may be contested by the debtors either directly with Education or through a consumer reporting agency.

---

[1] NSLDS does include information on some loans made pursuant to Title IV of the HEA prior to 1994, since many Title IV participants were able to provide information on those loans in a manner which permitted inclusion into NSLDS. Of course, for loans made prior to 1994, the information is more limited, and this is especially so for loans held by the former Higher Education Assistance Foundation (HEAF), once the largest guarantor, but which went out of business in 1993.

[2] DMCS underwent a major upgrade in September 2011.

**E-OSCAR**

13. As a Loan Analyst, I have business knowledge of credit reporting disputes received via the Online Solution for Complete and Accurate Reporting (e-Oscar) system, an online tool created by consumer reporting agencies (CRAs), such as Equifax, Experian, and Trans Union and used by Data Furnishers (DFs) to respond to consumer disputes regarding the accuracy of information on consumers' credit reports.

14. e-Oscar is an online automated system that (a) enables DFs to transmit to CRAs monthly credit reporting information, (b) enables CRAs to communicate to DFs consumer credit disputes for their review, and (c) enables DFs to respond to CRAs with regards to consumer credit history disputes.

15. Consumer credit history disputes can be initiated by a consumer either directly to CRAs or to DFs: (a) If a consumer initiates a credit history dispute with a CRA, a CRA submits a standardized credit (tradeline) dispute to a DF via an Automated Credit Dispute Verification (ACDV). The DF then responds to such a dispute from the CRA via e-Oscar; (b) If a consumer initiates a credit history dispute directly with a DF, a DF can, if appropriate, send an "out-of-cycle" credit history update to the CRA through e-Oscar via the Automated Universal Dataform (AUD) Process.

**ACDV Process**

16. If a borrower initiates a credit history dispute with a CRA, the CRA uses e-Oscar to send an Automated Credit Dispute Verification (ACDV) to DF. With rare exceptions, ACDVs do not transmit to DFs the credit dispute documentation supplied by the borrower, but instead convey dispute-related information through a limited number of dispute codes. ACDVs initiated by a CRA on behalf of a consumer are routed to the appropriate DF based on the CRA and subscriber code affiliations indicated by the DF. Each ACDV has a unique control number. The DF conducts its investigation by verifying the accuracy of tradeline information contained in a consumer's credit report. If it finds any inaccuracies, the DF may change the information contained in certain data fields in e-Oscar and return this information to the initiating CRA via ACDV. If an account is modified or deleted, electronic copies of the information contained in ACDV are sent to each CRA with whom the DF has a reporting relationship. The e-Oscar ACDV process is intended to provide the CRA with a correction to a consumer's file that must be handled outside of the regular monthly activity reporting cycle. Any data field that requires modification but that cannot be updated via ACDV is updated by Education through the next regular monthly reporting update.

**AUD Process**

17. If a borrower initiates a credit history dispute directly with the DF, the DF can, if appropriate, use e-Oscar to send an AUD report to all of the CRAs. Each AUD has a unique control number. After receiving a credit history dispute directly from consumer, the DF conducts its investigation by verifying the accuracy of tradeline information. The DF may then change the information contained in certain data fields in e-Oscar and transmit this information to all the

CRAs via AUD. The AUD updates or deletes previously reported tradeline data and is used to communicate to CRAs the results of investigations of any credit reporting disputes submitted by a borrower directly to the DF. E-Oscar is used to create the AUD and route it to the appropriate CRAs based on subscriber codes specified by the DF in the AUD record. If an account is modified or deleted, this information is conveyed via appropriate AUD codes to each CRA with whom the DF has a reporting relationship. The e-Oscar AUD process is intended to provide the CRA with a correction to a consumer's file that must be handled outside of the regular monthly activity reporting cycle. Any data field that requires modification but that cannot be updated via AUD is updated by Education through the next regular monthly reporting update.

Executed on this 13th day of December 2021.

*[signature]*
Cristin Bulman
Loan Analyst
U.S. Department of Education