IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JEFFREY GOOD,

        Plaintiff,

vs.                                  Case No. 21-02539-JAR-ADM

UNITED STATES DEPARTMENT OF
EDUCATION, ET AL.,

        Defendants.

**REPLY IN SUPPORT OF DEFENDANT UNITED STATES
DEPARTMENT OF EDUCATION'S MOTION TO
<u>DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) & 12(b)(6)</u>**

Defendant United States Department of Education (USDOE), by and through Duston J. Slinkard, United States Attorney for the District of Kansas, and Steven W. Brookreson, II and Christopher Allman, Assistant United States Attorneys, hereby submits this reply in further support of USDOE's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6) (Doc. 18).

USDOE's dispositive motion seeks dismissal of claims against USDOE for the following reasons: (1) Plaintiff's claims against USDOE brought under §§ 1681n and 1681o of the FCRA should be dismissed for lack of subject matter jurisdiction because Plaintiff's claims against USDOE are barred by sovereign immunity;  (2) Plaintiff fails to plead a plausible claim against the USDOE that his consumer credit file contains inaccurate or incomplete information; and (3) Plaintiff does not state a claim for willful noncompliance with the FCRA.  Assuming the case against it is not dismissed, USDOE further seeks (4) that Plaintiff's jury demand be stricken because Congress has not granted a right to trial by jury against the United States under the FCRA.

Although USDOE preemptively addressed much of the argument concerning sovereign immunity in its memorandum in support of motion to dismiss (Doc. 19), this reply targets specific

1

arguments advanced in Plaintiff's response. In addition, this reply addresses Plaintiff's attempts to bolster the sufficiency of his FCRA claims in his petition. Although Plaintiff's response also attempts to strengthen the adequacy of his willful noncompliance FCRA claims against the United States, USDEO stands on its prior briefing and does not further belabor that issue in this reply.

I. **PLAINITFF'S RESPONSE OFFERS NO SOUND REASON TO ABANDON CONTEXTUAL STATUTORY ANALYSIS OF THE RELEVANT FCRA PROVISIONS TO FIND A WAIVER OF SOVEREIGN IMMUNITY BY THE UNITED STATES**

Much of the parties' briefing on USDOE's motion to dismiss concerns USDOE's first argument for dismissal—that nothing in the text or statutory history of Section 1681n, Section 1681o, or the other FCRA provisions at issue here contains an unambiguous and unequivocally expressed waiver of sovereign immunity by the United States. In large part, the moving and responding parties' briefing presents the Court with the competing arguments of a circuit split on this position. Plaintiff and USDOE agree that there is no controlling precedent as to this issue before this Court. Plaintiff asks the Court to decide this jurisdictional issue in the same manner as the courts of appeals in *Mowrer v. U.S. Dept. of Transportation*, 14 F.4th 723 (D.C. Cir. 2021) and *Bormes v. United States*, 759 F.3d 793 (7th Cir. 2014), as well as the few[1] district courts

---

[1] In his Response, Plaintiff offers that "USDOE ask[s] this Court to deviate from [a] trend," a "recent trend" or "shift[] to find that immunity has been waived." Response, Doc. 25, 5. Based upon its thorough review of all federal cases addressing this issue, USDOE contests the existence of a "recent trend" favoring Plaintiff's position. Aside from the Federal Courts of Appeals cases deciding the issue, Plaintiff cites seven cases in support of his contention that the United States has waived sovereign immunity under the FRCA, but only three of which are decisions delivered in the last two years, and the most recent of which is *Murphy v. Equifax Info. Servs., LLC*, 120CV09275RMBAMD, 2021 WL 5578701, at *5 (D. N.J. Nov. 30, 2021). Response, Doc. 25., 13, n.6. Aside from the Federal Courts of Appeals cases, USDOE cites twenty-five district court cases in support of its contention that the United States has not waived sovereign immunity to FCRA claims, seventeen of which are decisions delivered in the last two years. Mem. in Supp., Doc. 19, 32-34. Although Plaintiff suggests that "counting numbers does not tell the whole story," the number of federal courts and weight of persuasive authority agreeing

supporting a mechanical reading that the 1996 amendments to the FCRA imposing liability on "persons" function to impose liability on the United States. USDOE requests that the Court find alongside *Robinson v. United States Dep't of Educ.*, 917 F.3d 799 (4th Cir. 2019), *cert. denied sub nom. Robinson v. Dep't of Educ.*, 140 S. Ct. 1440 (2020), *Daniel v. Natl. Park Serv.*, 891 F.3d 762 (9th Cir. 2018), and the overwhelming majority of district courts that, after considering much of the same legal arguments and finding the arguments against waiver more compelling, find the FCRA does not unambiguously and unequivocally waive sovereign immunity.

Plaintiff's response offers no meaningful explanation why this Court should sidestep proper contextual statutory analysis and embrace such an enormous expansion of governmental liability given the incompatibility and absurd results in reading an inadvertent waiver into the FCRA. "Statutory construction, however, is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme-because the same terminology is used elsewhere in a context that makes its meaning clear … or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law[.]" *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc's., Ltd.*, 484 U.S. 365, 371 (1988) (internal citations omitted).

First, Plaintiff's response substantially relies on the District of Columbia Circuit's decision in *Mowrer*, the most recent of the appellate court decisions amongst the circuit court split.*²*  The

---

that the United States did not unequivocally waive sovereign immunity for claims against it under the FCRA should not be lightly dispensed. Doc. 25, 12.

² At the appellate level, *Mowrer* levels the playing field among the circuits, except that the Seventh Circuit has retreated from its decision in *Bormes* in *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818 (2016). *See* Mem. in Supp., 35-36. The *Mowrer* decision gives no consideration to the Seventh Circuit's retreat in *Meyers*. Plaintiff posits that "the *Meyers* decision reinforces the findings in *Bormes*" (Doc. 25, 12), but that interpretation is misplaced. Courts with more persuasive and comprehensive analysis have placed far greater meaning on the *Meyers*

*Mowrer* decision that the FCRA provisions "speak clearly enough" to waive sovereign immunity neglects sound principals of statutory interpretation. *See Mowrer*, 14 F.4th at 729. Despite the abundant evidence from the FCRA's text and structure that the enforcement provisions do not apply to the federal government, the *Mowrer* court, much like *Bormes*, interpreted the word "'person' on a blank slate," acknowledged the inconsistent use of the word "person" under the FCRA, yet failed to construe such ambiguity in the statutory language in favor of immunity, and ignored the "'longstanding interpretive presumption that 'person' does not include the sovereign.'" *Robinson*, 917 F.3d at 802 (citations omitted). Indeed, the *Mowrer* court strayed too far from the well-established principle that "a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

*Mowrer* purports to grapple with familiar principals—"A waiver of sovereign immunity must be unequivocally expressed in statutory text." (*Id.* at 728) (citations omitted); "[A]mbiguous statutes do not abrogate state sovereign immunity—just as they do not waive federal sovereign immunity" (*Id.* at 729); and a waiver of sovereign immunity must "be clearly discernable from the statutory text *in light of traditional interpretive tools*[]" (Id. at 728) (emphasis added) (citation omitted)—yet *Mowrer* ultimately overstrains itself to circumvent these principals.

Rather than relying on traditional interpretive tools, *Mowrer* makes little holistic analysis of the statutory scheme at issue. *Mowrer* attempts to neutralize one internal inconsistency with the mechanical reading, which is the existence of an express waiver of sovereign immunity in § 1681u(j) of the FCRA—the type of necessary, unequivocal waiver called "plain as day" by the

---

decision. *See, e.g., Robinson*, 917 F.3d at 806-07 (emphasizing the *Meyers* retreat); *Daniel*, 891 F.3d at 774 ("[T]he Seventh Circuit has since questioned its own reasoning in *Bormes*."); *Dumas v. GC Services, L.P.*, 18-12992, 2019 WL 529260, at *4 (E.D. Mich. Feb. 11, 2019); *Johnson v. Trans Union, LLC*, No. 16-1240, 2019 WL 3202212, at *3 (W.D. La. July 15, 2019).

Fourth Circuit and "particularly instructive" by the Ninth Circuit. *Robinson*, 917 F.3d at 804; *Daniel*, 891 F.3d at 772.³  Moreover, *Mowrer* avoids clear indications of contextual ambiguity when it acknowledges the possibility that the mechanical reading may unconstitutionally impose damages on state governments—although it finds comfort that no constitutional bar prevents such a waiver against the federal government. *Mowrer*, 14 F.4th at 729.  Here too, *Mowrer* goes too far to work around numerous issues with a mechanical application of the FCRA.

As to the numerous implausible consequences of subjecting federal, state, tribal, and foreign governments to the punitive, criminal, and civil enforcement measures of the FRCA, *Mowrer* attempts to dismiss the concerns of the Fourth and Ninth Circuits by means of example, stating that "Congress may impose punitive damages on government entities, so long as it does so expressly" and noting that the "federal government routinely investigates itself." *Id*. at 730 (internal citation omitted).  *Mowrer* is too quick to underplay and underestimate the enormous consequences of making governments of all types liable to the FCRA's enforcement provisions, as described in *Robinson* and *Daniel,* and similarly stated in USDOE's memorandum, at 25-28.

---

³ In *Daniel,* the Ninth Circuit acknowledges that § 1681u contains "limited focus on federal agencies [that] might explain the difference in statutory language"—which is akin to the reasoning *Mowrer* finds the inconsistency unpersuasive. *Daniel*, 891 F.3d at 772; *Mowrer*, 14 F.4th at 729.  Yet *Daniel* correctly finds that—

> . . . § 1681u clouds whether the remedial provisions at §§ 1681o and 1681n extend "unambiguously" to monetary claims against the United States. *See Ordonez v. United States*, 680 F.3d 1135, 1138 (9th Cir. 2012) (quoting *Lane*, 518 U.S. at 192, 116 S. Ct. 2092). We view the comparison to § 1681u as particularly instructive because "it is useful to benchmark the statutory language against other explicit waivers of sovereign immunity" when determining whether an unequivocal waiver of sovereign immunity exists. *Al-Haramain*, 705 F.3d at 851.

*Daniel*, 891 F.3d at 772.

Furthermore, *Mowrer* finds that "contextual considerations would prevent application of the 'person' definition as written[]" as it requires the "federal government imposing criminal liability on itself, or subjecting itself to investigation by the states." *Id.* Yet, *Mowrer* holds that the same considerations do not amount to ambiguity as to the question of sovereign immunity "where the only interpretive constraint is that Congress waive it unambiguously." *Id.* It is telling that *Mowrer* finds ambiguity and a plausible interpretation of the FCRA that cuts against the mechanical reading as to the federal government's imposition of criminal liability on itself or subjection to investigation by the states, yet—like failing to see the forest through the trees—does not count these absurd results among the numerous reasons counseling the existence of ambiguity. It is not the rule that the courts should endeavor to work around such ambiguities in a statutory scheme to find a result that the United States waives sovereign immunity, rather it is said that "[a]ny ambiguities in the statutory language are to be construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires, Ambiguity exists if there is a plausible interpretation of the statute that would not authorize money damages against the Government." *F.A.A. v. Cooper*, 566 U.S. 284, 290–91 (2012) (internal citations omitted).

A plausible interpretation exists that upholds federal sovereign immunity. While ordinarily "identical words used in different parts of the same act are intended to have the same meaning … the "presumption of consistent usage readily yields to context, and a statutory term—even one defined in the statute—may take on distinct characters from association with distinct statutory objects calling for different implementation strategies." *Util. Air Reg. Group v. E.P.A.*, 573 U.S. 302, 320 (2014) (citations and quotations omitted). This principal of statutory interpretation allows for the statutory term "person" to be given its defined meaning (i.e., one including the federal

6

government) with respect to § 1681n and § 1681o and its only fair reading (i.e., one that excludes the federal government) in § 1681q.  USDOE has posited that "person" may be interpreted to include the federal government with respect to substantive provisions and to exclude the federal government in the case of enforcement mechanisms. Mem. in Supp., Doc. 19, 30-31; *see also Robinson*, 971 F.3d at 806 (advancing the same position).  Sovereign immunity must be evaluated on a provision-by-provision basis. *E.g., United States v. Idaho ex rel. Dir., Idaho Dept. of Water Resources*, 508 U.S. 1, 8 (1993).  At a minimum, reading the FCRA to exclude the United States (and other governments) from the civil-liability provisions "is a plausible interpretation of the statute" and therefore must be adopted in this context. *Cooper*, 566 U.S. at 290.

Plaintiff's reliance on the other cases he cites is even less helpful.  Citing *Stenberg v. Carhart*, 530 U.S. 914, 942 (2000), Plaintiff instructs that "[w]hen a statute includes an explicit definition, [the Court] must follow that definition, even if it varies from that term's ordinary meaning." Reply, Doc. 25, 6.  *Stenberg* is not helpful to the present case and a question of contextual ambiguity.  *Strenberg* involved the application of a statute's explicit definition compared with a state attorney general's narrowing construction of the same. *Id*. at 941-42.  Contrary to Plaintiff's suggestion, the Court is not bound such that it must mechanically apply a statutory scheme when it finds the apparently straightforward language ambiguous when read in context.  *See King v. Burwell*, 576 U.S. 473, 475 (2015).

Plaintiff's reliance on *Moore v. U.S. Dep't of Agric., ex rel. Farmer's Home Admin.,* 55 F.3d 991 (5th Cir. 1995) is misplaced.  In *Moore* , the Fifth Circuit, consistent with the position of the federal government, held that the Equal Credit Opportunity Act waives the immunity of the United States for monetary relief.  The Equal Credit Opportunity Act defines "creditor" to include any "person," which is, in turn, defined to include any "government or governmental subdivision."

7

15 U.S.C. § 1681a(e), (f). The civil liability provisions of the Equal Credit Opportunity Act, unlike those of the FCRA, explicitly refer to governmental entities and suggest that Congress crafted the remedial scheme with such entities in mind. The Equal Credit Opportunity Act provides that "[a]ny creditor, other than a government or governmental subdivision or agency," can be liable for punitive damages. 15 U.S.C. § 1691e(b). By contrast, the immediately preceding Equal Credit Opportunity Act provision for compensatory damages—section 1691e(a)—applies to all "creditors" and contains no such governmental exemption. *Id.* § 1691e(a). The FCRA contains no such statutory language. Unlike the Equal Credit Opportunity Act, the analogous FCRA civil damages provisions contain no exemption for, and make no mention of, governmental entities. Thus, there is no comparable evidence that Congress crafted the FCRA's private civil liability provisions with a view to subject the federal government to open-ended damages liability. The Equal Credit Opportunity Act's focused antidiscrimination provisions, moreover, contrast markedly with the sweeping U.S. government liability for everyday activities that would follow from holding the FCRA waives sovereign immunity.

Plaintiff similarly errs in seeking to rely on the Fifth Circuit's discussion in *Moore* as to the Truth in Lending Act's express preservation of immunity. Response, Doc. 25, 7-8. Waivers of sovereign immunity must be clear and express; they cannot be found implicitly by indirect inference in the manner Plaintiff proposes. That Congress made doubly sure to preserve sovereign immunity in the Truth in Lending Act by no means clearly demonstrates that it waived sovereign immunity in the FCRA.

II.     **PLAINTIFF'S RESPONSE CANNOT AND DOES NOT SHORE UP HIS FAILURE TO PLEAD INACCURACIES OR FALSE IMFORMATION REGARDING HIS STUDENT LOANS**

Plaintiff's response fruitlessly posits the adequacy of his pleadings under the Kansas Rules of Civil Procedure, calling to the Kansas pleading statute K.S.A. 60-209, and quoting Kansas case law that "[d]iscovery will fill in the gaps." Response, Doc. 25, 14-15 (quoting *Montoy v. State*, 275 Kan. 145, 148, 62 P.3d 228 (2003)). Nonetheless Plaintiff acknowledges that "[a]fter the removal of an action from state court ... it has been settled by numerous cases that the removed case will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters." Response, Doc. 25, 14 (quoting *Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010)); *see also Varney v. R.J. Reynolds Tobacco Co.*, 118 F. Supp. 2d 63, 67 (D. Mass. 2000) ("Even in cases removed from state court, the adequacy of pleadings is measured by the federal rules. … The present complaint fails to pass muster even under this indulgent standard. … unlike a well-pleaded complaint, it reveals very little about the plaintiff's individual case.") Plaintiff's citation to Kansas common law is as unhelpful to test the adequacy of Plaintiff's pleadings under the Federal Rules of Civil Procedure as it would be unhelpful to Plaintiff's claims arising under federal statute. Furthermore, discovery is not appropriate to resolve a motion to dismiss for failure to state a claim for relief:

> The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's ... complaint alone is legally sufficient to state a claim for which relief may be granted," *Peterson v. Grisham,* 594 F.3d 723, 727 (10th Cir. 2010) (internal quotation marks omitted). One purpose of requiring that a complaint state a plausible claim for relief is "to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir.2011) (internal quotation marks omitted).

*Sheldon v. Khanal*, 502 Fed. Appx. 765, 773 (10th Cir. 2012).

Plaintiff's response fails to explain why his action should not be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff's response does not attempt to address the majority of USDOE's supportive citations which instruct that Plaintiff is required to plead a factual inaccuracy underlying his FCRA claims against USDOE—such as *George v. Chex Sys., Inc.,* No. 16-2450-JTM, 2017 WL 119590 (D. Kan. Jan. 12, 2017) (granting Rule 12(b)(6) motion to dismiss for failure to allege actual falsity under FCRA claim); *Abeyta v. Bank of Am.*, 2016 WL 1298109 (D. Nev. Mar. 31, 2016) (granting Rule 12(b)(6) motion to dismiss after allowing plaintiff leave to amend FCRA claims to plead factual inaccuracy in reported delinquencies, plaintiff failed again the second time); and *Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 458 (11th Cir. 2019) (affirming Rule 12(b)(6) grant of motion to dismiss for failure to state a claim. "A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b).").

Rather, Plaintiff's response attempts to summarize his pleadings so as to suggest that his petition meets the pleading requirements:

> Plaintiff clearly alleges that he discovered errors on his credit report (State Ct. Pet. for Damages, Doc 5, at ¶ 22), that he properly raised a dispute regarding said errors to the appropriate parties (*Id*. at ¶ 23), that two of the three credit reporting agencies received his dispute and corrected their reporting, and that TransUnion and Defendants failed to correct their reporting of the erroneous information. (*Id*. at ¶¶ 27-29).

Response, Doc. 25, 15.  Plaintiff's summary of his conclusive allegations misses several points of concern, including, most importantly, *how* are the supposed errors factually inaccurate, but also how was it USDOE allegedly failed to conduct a reasonable investigation, failed to review all relevant information, failed to report the results of its investigation to the credit bureaus, or failed to correct any inaccuracies or incomplete information.  This is not to suggest that Plaintiff must satisfy a "heightened fact pleading of specifics, but only enough facts to state a claim to relief"

regarding the existence of factual inaccuracies and why USDOE's investigation was not reasonable, which Plaintiff does not allege. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Accompanying USDOE's argument that Plaintiff has failed to sufficiently plead actual inaccuracy, USDOE's motion to dismiss takes the next step and states that the reported information in dispute is in fact accurate. USDOE attaches business records reflecting the same to its memorandum in support, Doc. 19. "[D]istrict courts may consider evidence beyond the pleadings where the document is central to the claims presented and its authenticity is not disputed by the parties." *Frost v. ADT*, LLC, 947 F.3d 1261, 1267, n.4 (10th Cir. 2020) (citing *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) (district court appropriately considered a contract containing one-year limitation period even though the document was not attached to the complaint.). Plaintiff's response merely suggests that this type of argument is inappropriate in a 12(b)(6) motion, without cohesive argument explaining why that it is the case in this instance. Rather than address the many cases supportive of USDOE's position—USDEO cites numerous cases where district courts have likewise rejected similar suits at the motion to dismiss stage (Mem. in Supp, Doc. 19, 41-42, n. 24)—Plaintiff seeks to distinguish only *Cowley v. Equifax Info. Services, LLC*, merely because *Cowley* was decided on a motion for summary judgment. Because of this, Plaintiff posits, he too should be given an opportunity for discovery. *Cowley,* 2019 WL 4936036 (W.D. Tenn. Aug. 12, 2019). While it is true that *Cowley* was decided on a motion for summary judgment, *Cowley* is informative because of its discussion of the plaintiff's accurate historical payment information. Mem. in Supp, Doc. 19, 43. Also stated above, discovery should not be allowed for the purposes of fixing Plaintiff's insufficient claims.

11

## Conclusion

While Plaintiff would ask the Court to ignore the history of the FCRA provisions at issue and counsels against consideration of the overwhelming majority of district courts finding no waiver of sovereign immunity, the ambiguity in the FCRA's mechanical reading is readily apparent. Nothing in the text of the FCRA provisions at issue contain an unambiguous and unequivocal expressed waiver of sovereign immunity by the United States. The legislative history counsels the same and as explained in length in USDOE's memorandum, informs how such an inadvertent reading has come to bear through later amendment to the FCRA. Furthermore, Plaintiff fails to sufficiently allege any facts that would show that he states a plausible claim against the USDOE that his consumer credit file contains inaccurate or incomplete information, nor can he.

For the reasons set forth in USDOE's memorandum in support and as further suggested in this reply, USDOE respectfully requests the Court grant the USDOE's motion to dismiss Plaintiff's complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or alternatively under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Respectfully submitted,

DUSTON J. SLINKARD
United States Attorney
District of Kansas

s/ Steven W. Brookreson, II
STEVEN W. BROOKRESON, II
Assistant United States Attorney
Ks. S.Ct. No. 28106
500 State Avenue,
Suite 360
Kansas City, Kansas 66101
PH: (913) 551-6730
FX: (913) 551-6541
Email: steven.brookreson@usdoj.gov

s/ Christopher Allman
CHRISTOPHER ALLMAN
Assistant United States Attorney
Ks. S. Ct. No. 14225
500 State Avenue,
Suite 360
Kansas City, Kansas 66101
PH: (913) 551-6730
FX: (913) 551-6541
Email: chris.allman@usdoj.gov

Attorneys for the Defendant United States Department of Education

CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2021, the foregoing was electronically filed with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ Steven W. Brookreson, II
STEVEN W. BROOKRESON, II
Assistant United States Attorney

13